IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FW ASSOCIATES LLC, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 18 C 5081 |
| WM ASSOCIATES LLC and WILLIAM METROPULOS, | ) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

FW Associates, LLC sued WM Associates, LLC and its founder, William Metropulos, for fraudulent transfer, alleging that Metropulos transferred his interest in a company called Smart Bar to avoid paying a judgment he owes to FW Associates. The defendants counterclaimed, seeking to have FW Associates dissociated from Smart Bar and to obtain a distributional interest in Smart Bar that Metropulos alleges he is owed. FW Associates has moved to dismiss the counterclaim.

## Background

This case concerns a dispute over the management of Smart Bar, a company that makes an automated cocktail dispenser called the Smartender. FW Associates and Metropulos founded Smart Bar USA, LLC and Smart Bar International, LLC (the Smart Bar entities) in 2012. Their relationship soon soured; by the end of 2013, Metropulos had filed two separate lawsuits against FW Associates. The first, filed on behalf of Smart Bar USA, sought to have FW Associates dissociated from Smart Bar.

The second alleged that FW Associates committed fraud and tortious interference. In early 2013, FW Associates successfully moved to compel arbitration of these claims under the arbitration clause of Smart Bar's operating agreement.

In arbitration, FW Associates brought a claim to dissolve Smart Bar, alleging that Metropulos breached his contractual and fiduciary duties to the company. The respondents (Metropulos, Smart Bar members Tim Knecht, Kevin Nevala, John Coyle, and Tom Recine, and former Smart Bar managers Tom Jemiola and Suzanne Metropulos) counterclaimed to have FW Associates dissociated from Smart Bar. On December 2, 2014, the arbitrator issued an interim award in which he rejected Metropulos's counterclaim and ordered Metropulos dissociated from Smart Bar, explaining that he

> has willfully and persistently committed material breaches of the Operating Agreement by misrepresenting and concealing the liabilities of the Smart Bar Entities, refusing to provide information about potential investors to Claimants, entering into distribution agreements without giving Claimants the opportunity to review them first, refusing to honor the spending controls that Claimants attempted to put in place, and causing the Smart Bar Entities to incur legal expenses that exceeded his authority.

Pl.'s Ex. B (Interim Award), dkt. no. 14-2, at 14-15. The arbitrator also ordered the dissolution of the Smart Bar entities because "Mr. Metropulos has refused to abide by the terms of the Operating Agreement" and engaged in conduct that was oppressive to FW Associates. *Id.* at 13-14. Finally, he ordered Metropulos to pay several hundred thousand dollars in legal fees and expenses to FW Associates and the Smart Bar entities. *Id.* at 17.

In April 2015, the arbitrator issued a final award that affirmed and incorporated the interim ruling except for the dissolution of the Smart Bar entities. He noted that since Metropulos had been removed, Smart Bar had "reached an agreement for moving

forward with the business" and that he saw "no reason to interfere with this positive development."  Pl.'s Ex. D (Ruling & Final Award), dkt. no. 14-4, at 1-2.  A Cook County Circuit Court judge confirmed the final award, and the Illinois Appellate Court affirmed that decision.  See *Metropulos v. FW Assocs., LLC*, 2017 IL App (1st) 163196-U.

In 2018, FW Associates brought the present suit against Metropulos and an entity he founded, WM Associates, alleging that Metropulos had wrongfully transferred his interest in the Smart Bar entities to WM Associates in order to delay or avoid paying the arbitration judgment.  The defendants counterclaimed, alleging that FW Associates wrongfully failed to buy out Metropulos' distributional interest and engaged in other misconduct warranting its dissociation.

FW Associates has moved to dismiss the counterclaim.  For the reasons stated below, the Court grants the motion.

## Discussion

The Court has jurisdiction under 28 U.S.C. § 1332 because parties are of diverse citizenship and the amount in controversy exceeds $75,000.

In ruling on the motion to dismiss the counterclaim, the Court construes the counterclaim in the light most favorable to Metropulos and WM Associates, "accepting as true all well-pleaded facts and drawing reasonable inferences in their favor."  *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016).  To survive a motion to dismiss for failure to state a claim, the counterclaimants "must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When a party moves to dismiss a claim "based

3

on an affirmative defense such as res judicata," dismissal is appropriate if it is "clear from the face of the complaint, and matters of which the court may take judicial notice, that the . . . claims are barred as a matter of law." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

A.  **Metropulos's distributional interest (count one)**

In count one of their counterclaim, the defendants contend that the Illinois LLC Act, 805 Ill. Comp. Stat. 180/35, entitles Metropulos to recover the value of his distributional interest in Smart Bar. FW Associates argues that this count fails to state a claim for two reasons. First, it contends that Metropulos is not entitled to a distributional interest because the Illinois legislature repealed the law automatically conferring that interest on dissociated members of an LLC. Second, it argues that FW Associates is not a proper party against which to assert this claim, which FW Associates contends must be brought against Smart Bar.

The repeal of section 35-60 of the Illinois LLC Act does not deprive Metropulos of his right to recover the value of his distributional interest. That provision, which remained in effect until July 1, 2017, required limited liability companies to purchase a distributional interest of a member upon the member's dissociation if the dissociation did not result in the dissolution of the company. 805 Ill. Comp. Stat. 180/35-60(a) (repealed 2016). Metropulos therefore became entitled to payment of his interest upon dissociation, which the defendants allege occurred on November 21, 2016.

Under Illinois law, a substantive change to a statute, including its repeal, has only prospective effect absent a clear legislative intent to make the change retroactive. 5 Ill. Comp. Stat. 70/4; *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 536-37 (7th Cir. 2007).

The act repealing section 35-60 evinces no such intent. See generally 2016 Ill. Legis. Serv. P.A. 99-637 (H.B. 4361) (amending the Illinois LLC Act). And because the former section 35-60(a) was "concerned with directing behavior outside the courtroom," as opposed to being "addressed to lawyers and judges in their professional roles," its repeal is substantive rather than procedural. See Thomas, 487 F.3d at 537. "[I]f a statutory change is substantive, then the change is not to be applied retroactively." Perry v. Dep't of Fin. & Prof'l Regulation, 2018 IL 122349, ¶ 43, 106 N.E.3d 1016, 1027. The Court therefore concludes that the repeal of section 35-60 cannot be interpreted to "affect . . . any right accrued[] or claim arising before the new law takes effect," 5 Ill. Comp. Stat. 70/4, including Metropulos's right to recover the value of his distributional interest upon dissociation.

The defendants have failed to state a claim in count one, however, because FW Associates is not the proper party from which to recover the value of Metropulos's distributional interest. The defendants cite two statutes that they contend permit them to bring a suit against FW Associates rather than against Smart Bar. The first is 805 Ill. Comp. Stat. 180/15-20(a), which permits a "member to maintain an action against a limited liability company or another member" to enforce his or her rights under the LLC Act. This provision does not apply to Metropulos, however, who ceased to be a member of Smart Bar upon his dissociation. See 805 Ill. Comp. Stat. 180/35-55(a)(1) ("Upon a member's dissociation from a limited liability company . . . the member ceases to be a member and is treated the same as a transferee of a member.").

The defendants next cite 805 Ill. Comp. Stat. 180/35-1(b), which provides that in a proceeding by a transferee of a distributional interest to dissolve an LLC due to

5

harmful or oppressive conduct, "the court may order a remedy other than dissolution including, but not limited to, a buyout of the applicant's membership interest." But this statute provides no independent basis for bringing either a dissolution action or an action for buyout of a membership interest against another member of the LLC rather than against the LLC itself. Indeed, the fact that the buyout remedy is available only as alternative relief in a dissolution proceeding suggests the LLC is the appropriate defendant because it plainly has "a present, substantial interest in the matter being litigated" that would be affected by dissolution. *City of Elgin v. Arch Ins. Co.*, 2015 IL App (2d) 150013, ¶ 34, 53 N.E.3d 31, 43 (defining a necessary party). The Court finds no basis to interpret section 35-1(b) to permit suits against parties other than the LLC from whom the distributional interest is sought.

Finally, the defendants argue in passing that FW Associates is a proper party because Smart Bar is its alter ego. This argument fails, however, because even if generously construed in the defendants' favor, the counterclaim and briefs do not sufficiently allege that Smart Bar is FW Associates' alter ego. Under Illinois law, an alter ego exists "where: (1) a unity of interest and ownership appears so strong that the separate personalities of the corporation and the parties who compose it no longer exist, and (2) under the circumstances, adhering to the fiction of a separate corporation would promote injustice or inequitable circumstances." *Saletech, LLC v. East Balt, Inc.*, 2014 IL App (1st) 132639, ¶ 27, 20 N.E.3d 796, 806. By contrast, the defendants offer only the conclusory allegation that "since FW now claims to be its 100% owner, FW is the *alter ego* of the company." Defs.' Resp. Br., dkt. no. 16, at 4. This contention fails to allege facts that would support either element of the test for an alter ego, and the

6

counterclaim therefore relies on the kind of "bare and conclusory allegation[]" that is "insufficient to state a claim." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016).

Because FW Associates is not a proper party to the defendants' claim in count one, that claim must be dismissed. *See, e.g.*, *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014) (affirming the district court's dismissal under Rule 12(b)(6) where the plaintiff could not "obtain any meaningful relief against" particular defendants).

**B.     Conversion of the distributional interest (count two)**

In count two, the defendants allege a range of misconduct by FW Associates, contending that it purported to take away Metropulos's ownership interest in the company and that it relocated Smart Bar's headquarters to Nevada without legal authority. The defendants have asked the Court to find that WM Associates owns Metropulos's distributional interest in Smart Bar USA or, alternatively, to award damages for conversion of that interest.

FW Associates argues that this count fails to state a claim because Illinois does not recognize a tort of conversion of intangible rights, citing *American National Insurance Co. v. Citibank, N.A.*, 543 F.3d 907, 910 (7th Cir. 2008). In response, the defendants insist that count two "is not a conversion (or trover) action," but instead "is based on the LLC Act and the parties' contract." Defs.' Resp. Br., dkt. no. 16, at 5. One might expect that to dispose of the issue, but no: the defendants devote the next several pages to arguing that conversion of a distributional interest *is* cognizable under Illinois law. *See id.* at 5-8. The Court cannot determine, either from the face of the counterclaim or from the defendants' briefs, whether the defendants seek to recover for

conversion.

This ambiguity is ultimately immaterial, however, because count two fails to state a claim no matter how it is construed. If understood as a claim under the LLC Act, the claim fails because FW Associates is not a proper party to an action to recover a distributional interest under the statute, as the Court discussed earlier. If interpreted as a claim to enforce the terms of the operating agreement, it cannot withstand the application of issue preclusion, as the Court will discuss in the following section.

Nor can the defendants state a claim for conversion of Metropulos's distributional interest. As the Seventh Circuit explained in *American National Insurance*, "Illinois courts do not recognize an action for conversion of intangible rights." *American Nat'l Ins.*, 543 F.3d at 910; *see also In re Thebus*, 108 Ill. 2d 255, 260, 483 N.E.2d 1258, 1260 (1985) ("[A]n action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money.").[1] At least one other court applying this precedent has found that a plaintiff cannot sue for conversion of a distributional interest because it is neither "tangible personal property" nor "intangible personal property that can be directly converted into cash." *See A Communication Company, Inc. v. Bonutti*, 55 F. Supp. 3d 1119, 1124 (S.D. Ill. 2014). Because the counterclaim alleges that FW Associates "converted" only the intangible right of payment, rather than an interest in a tangible thing or an intangible thing that can be converted to cash, count two fails to state a claim for conversion.

---

[1] The defendants assert that the Illinois Supreme Court abandoned the "intangibility" analysis in *In re Thebus* and instead inquired into "indefinability." This is incorrect. In defining the scope of the tort of conversion, the court quoted the observation that "an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible." *In re Thebus*, 108 Ill. 2d at 260, 483 N.E.2d at 1260 (quoting 18 Am. Jur. 2d Conversion § 9, at 164 (1965)).

**C.     Claim and issue preclusion (counts two, three, and four)**

FW Associates argues that counts two, three, and four are barred by claim and issue preclusion based on the arbitrator's ruling. The parties agree that Illinois law governs the issue of whether the arbitrator's ruling has preclusive effect. In ruling on a motion to dismiss, the Court may "take judicial notice of arbitration orders and filings to establish the fact of such [arbitration]." *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 900 n.1 (N.D. Ill. 2016) (internal quotation marks omitted) (alteration in original).

**1.     Claim preclusion**

Claim preclusion, also known as res judicata, applies only if "(1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467, 889 N.E.2d 210, 213 (2008). Whether the causes of action are identical turns on whether "they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Squires-Cannon v. Forest Preserve Dist.*, 897 F.3d 797, 804 n.4 (7th Cir. 2018) (quoting *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311, 703 N.E.2d 883, 893 (1998)).

The arguments for claim preclusion fail for lack of identity between the causes of action in the two suits. Although in arbitration the defendants sought to dissociate FW Associates from Smart Bar, as they do in this case, their counterclaim in this case arises from entirely different operative facts from those at issue in the arbitration. In the counterclaim, the defendants allege that FW Associates committed misconduct *after* the arbitration ruling, such as the allegedly wrongful removal of two board members and the purchase of other membership interests without notice to the defendants. These

allegations concern conduct that post-dates the arbitration ruling and that necessarily could not have given rise to the previous cause of action. Because the causes of action in each case turn on different operative facts, claim preclusion is inapplicable.

2. **Issue preclusion**

Issue preclusion, also known as collateral estoppel, applies when "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White*, 216 Ill. 2d 23, 38, 833 N.E.2d 834, 843 (2005). "Generally, arbitration awards have the same *res judicata* and collateral estoppel effect as court judgments." *Pepper Constr. Co. v. Palmolive Tower Condos., LLC*, 2016 IL App (1st) 142754, ¶ 73, 59 N.E.3d 41, 63.

Elements two and three of the issue-preclusion test are easily satisfied. Metropulos was a party to both the arbitration and the state-court enforcement proceedings, and the arbitrator's ruling constitutes a final judgment on the merits. *See, e.g.*, *Bankers Leasing Ass'n, Inc. v. Pranno*, 288 Ill. App. 3d 255, 262, 681 N.E.2d 28, 33 (1997) ("Arbitration is in the nature of a judicial inquiry with its object to achieve a final and binding disposition . . . with the force of an adjudication precluding the parties from relitigating the same subject.").

The arbitrator's ruling also satisfies the first element because it decided an issue identical to one in this case. In determining that Metropulos should be dissociated from Smart Bar, the arbitrator concluded that "Metropulos has refused to abide by the terms of the Operating Agreement" and that "Metropulos has willfully and persistently

committed material breaches of the Operating Agreement."  Interim Award, dkt. no. 14-2, at 13-14.  The arbitrator reiterated this finding in the final ruling.  See Final Award, dkt. no. 14-4, at 2 ("Mr. Metropulos breached the operating agreements that provided him with the rights and privileges of being a Founding Member . . . .").

Whether Metropulos breached the operating agreement is at issue in this case because counts two, three, and four each seek to enforce the terms of that agreement.  To prevail on those claims, Metropulos must show that he substantially performed his obligations under the contract.  See Swyear v. Fare Foods Corp., 911 F.3d 874, 886 (7th Cir. 2018) ("Under Illinois law, to prevail on a breach of contract claim the plaintiff must show . . . she substantially performed the contract . . . .").  A party who has materially breached a contract has not substantially performed.  See LB Steel, LLC v. Carlo Steel Corp., 2018 IL App (1st) 153501, ¶ 38.  Metropulos' counterclaim therefore turns on an issue identical to one decided in arbitration.

The defendants argue that there is "no decisional language in any arbitration award showing that the Count II, Count III, or Count IV claims of this case were actually ruled on by the arbitrator."  Defs.' Resp. Br., dkt. no. 16, at 11.  This argument lacks merit.  Unlike claim preclusion, issue preclusion does not require the causes of action to be identical—only the particular issue.  The defendants also contend that issue preclusion cannot apply because the arbitrator exceeded his authority, but these arguments also rely on the mistaken premise that collateral estoppel requires identity of claims.

The Court concludes that the arbitrator's ruling precludes the defendants from relitigating whether Metropulos performed his obligations under the operating

11

agreement. Because substantial performance of those obligations is an essential element of his claims in counts two, three, and four, dismissal of those claims is appropriate.

## Conclusion

For the foregoing reasons, the Court grants FW Associates' motion to dismiss defendants' counterclaim in its entirety [dkt. no. 12]. The ruling date of January 31, 2019 is vacated, and the status hearing set for that date is reset to 8:15 a.m. and will be conducted in chambers (Room 2188).

```
                                    _____
                                            MATTHEW F. KENNELLY
                                          United States District Judge
```

Date: January 28, 2019