IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FW ASSOCIATES, LLC, a Nevada limited liability company, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 2018-cv-05081 |
| WM ASSOCIATES, LLC, an Illinois limited liability company, and WILLIAM METROPULOS, ) ) ) ) | Judge Kennelly |
| Defendants. ) | |

DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT

This memorandum is respectfully submitted on behalf of defendants, WM Associates, LLC, and William Metropulos, by their attorneys, in support of their Motion for Summary Judgment on Counts I, II, III and IV of plaintiff's Amended Complaint.

A.
Summary:
Plaintiff's Amended Claims

Plaintiff's Amended Complaint contains four counts:

- ■ Count I: is an action under §5(a)(1) of the Illinois Uniform Fraudulent Transfer Act [the "IUFTA"] [740 ILCS 160/5(a)(1)]. A §5(a)(1) claim ("fraud in fact") requires proof of actual intent to hinder, delay or defraud a creditor.

- Count II: is an action under §5(a)(2) of the IUFTA [740 ILCS 160/5(a)(2)]. A §5(a)(2) claim ("fraud in law") requires proof that a transfer was made without receiving a reasonably equivalent value in exchange for the transfer, irrespective of intent, *and* that the transferor:

    (A) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small …; or

    (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

- Count III: is an action under §6(a) of the IUFTA [740 ILCS 160/6(a)]:

    160/6 **Transfer or obligation fraudulent as to creditor – Claims arising before the transfer**

    §6. (a) A transfer made … by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made … if the debtor made the transfer … without receiving a reasonably equivalent value in exchange for the transfer … and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer ….

- Count IV: is a freestanding common law action to determine that WM Associates LLC is an *alter ego* of Mr. Metropulos and thereby pierce the corporate veil of WM Associates, LLC; Count IV alleges that "WM Associates LLC, is merely an *alter ego* of Metropulos set up to sanction and further a fraud on Plaintiff as a creditor of Metropulos" [Dkt. no. 45 (Am. Complt., Ct. IV, ¶48].

**B.
The Fraudulent Transfer Claims: Counts I, II and III**

A. **The bar of prior consent.**

In Counts I-III, FW seeks to set aside a transfer of LLC membership interests as "fraudulent" as to FW -- despite the fact that FW had expressly authorized and consented to those transfers in advance. That consent was contained in §10.4 of the Operating Agreements of both Smart Bar companies, which in material part provides:

> ... a Member may freely transfer all or any portion of his or its Membership Interest to (i) members of his family (spouse, ancestors, siblings or descendants), or (ii) to certain trusts for his benefit of members of his family, or (iii) to an entity controlled by the Member (all of the foregoing are referred to herein as a "Permitted Transferee") ....

These FW fraudulent transfer claims are barred as a matter of law. A creditor that authorized or approved a transfer, as did FW, cannot later avoid it as a "fraudulent transfer" as to that creditor:

> As the Movants properly point out, courts ... including the Second Circuit -- have held that creditors who are participants in an alleged fraudulent transfer, or who have ratified it, cannot then seek to have that transfer avoided. The rubrics under which that conclusion has been reached have varied slightly -- "ratification," "consent," "estoppel," or "material participa[tion] in the transaction" -- but the underlying point is the same. Creditors who authorized or sanctioned the transaction ... can hardly claim to have been defrauded by it, or otherwise to be victims of it.
>
> *Weisfeldner v. Fund 1 (In re Lyondell Chemical Co.)*, 503 B.R. 348, 383-384 (Bankr. S.D.N.Y., 2014)

> *In re Best Products Co.,* 168 B.R. 35, 57 (Bankr.S.D.N.Y.1994) (...) ("A fraudulent transfer is ... [only] voidable; thus, it can be ratified by a creditor who is then estopped from seeking its avoidance." (citing 1 G. Glenn, *Fraudulent Conveyances and Preferences,* §§ 111 at 221 and 113 at 223 (1940) (...))); *Adelphia Recovery Trust v. HSBC Bank USA,* 634 F.3d 678, 691 (2d Cir.2011)(...) ...; *Harris v. Huff (In re Huff),* 160 B.R. 256, 261 (Bankr.M.D.Ga.1993) (...) (a trustee who had succeeded to a secured creditor's rights ... could not prosecute a fraudulent conveyance action, because the creditor had agreed not to contest the debtor's conveyance to his mother, and hence was estopped from challenging the conveyance); ....
>
> *Weisfeldner, supra,* 503 B.R. at 384, n.175

3

> "The doctrine of ratification applies to transactions sought to be avoided as fraudulent transfers." *HSBC Bank USA, Nat. Ass'n v. Adelphia Communications Corp.*, No. 07 Civ. 553, 2009 WL 385474, at *6 (W.D.N.Y. Feb. 12, 2009), *aff'd sub nom. In re Adelphia Recovery Trust,* 634 F.3d 678 (2d Cir.2011).
>
> *Davis v. Carroll*, 937 F.Supp.2d 390, 427 (S.D.N.Y., 2013)

> "A creditor who ratifies or participates in a fraudulent transfer may be estopped from attacking the transfer." *In re Dunn,* …, 2006 WL 6810930, at *8 (9th Cir. BAP Oct. 31, 2006); *see also Lane v. Eggleston,* 284 F. 743, 745 (5th Cir.1922) (stating that a creditor cannot "avoid [a transfer], after he has voluntarily assented to it").
>
> *U.S. Bank Nat'l. Ass'n. v. Verizon Communications, Inc.*, 479 B.R. 405, 411 (N.D.Texas, 2012)

> … the Defendant should be estopped from challenging the transfer … since Defendant had previously approved the transfer.
>
> *In re Pinto*, 89 B.R. 486, 495, n.5 (Bankr. E.D.Pa., 1988)

> … even if we viewed plaintiff's theory as being an attempt to set aside a fraudulent conveyance, such a turnover order would be based upon a judgment lien against the real estate, a right which plaintiff specifically waived in its notes.
>
> *First American Bank of Aurora v. Denney*, 53 Ill.App.3d 832, 368 N.E.2d 1304, 1305 (2nd Dist. 1977)

In this case, the transfer of ownership of the LLC membership interests from Mr. Metropulos to an entity controlled by him (and owned by him and his immediate family):

(i) was expressly authorized, consented to, and contemplated in the Operating Agreements of both Companies (without any notice required to other members or to the Companies, *see* §10.4);

(ii) is a property right vested in the membership interests and in Metropulos; and

(iii) was agreed and consented to in advance by FW in its negotiation and execution of the Operating Agreements.

4

Accordingly, the transfers of the membership interests from Metropulos to his Metropulos-managed family company was not -- and cannot be as a matter of law -- a fraudulent transfer as to the consenting FW.

The fraudulent transfer claims of Counts I, II and III also fail because each lacks one or more elements on the undisputed facts of this case.

## B.
## Count I: §5(a)(1) Claim
## "Fraud in Fact"

A IUFTA §5(a)(1) claim requires proof of *actual intent* to hinder, delay or defraud a creditor. [*Apollo Real Estate Investment Fund, IV, LP v. Gelber*, 403 Ill.App.3d 179, 935 N.E.2d 963, 975 (1st Dist. 2010), *appeal denied*, 238 Ill.2d 647 (2010).] And under Illinois law, fraud claims -- including §5(a)(1) claims -- must be proved by *clear and convincing* evidence. [*Hofman v. Hofman*, 94 Ill.2d 205, 446 N.E.2d 499, 506 (1983).] Count I fails for lack of such intent to defraud a creditor.

The transfer from Metropulos to WM Associates, LLC, was made pursuant to prior bilateral agreement and authorization that Mr. Metropulos could make such a transfer. This prior contractual authorization by FW negates any "intent to defraud" FW. The intent to transfer (reflected in the written agreements) pre-dated any creditor-debtor relationship between these parties; *i.e.*, Metropulos' intent to transfer arose before FW became a "creditor," hence independent of FW's later creditor status. (Moreover, the family-owned FW Associates, LLC, was created in November 2013 [Decl. of Wm. Metropulos, ¶7] – the first step in implementing that intent – also before FW became or threatened to become a creditor.)

There is simply nothing fraudulent about doing what a "creditor" or potential creditor authorized you to do. Section 5(a)(1) requires *actual* and contemporaneous intent, proven by clear and convincing evidence, which cannot be satisfied by constructive extension of a benign prior intent to transfer.

### C.
### Count II: §5(a)(2) Claim
### "Fraud in Law"

Constructive fraud or "fraud in law" is the cause of action set forth in section 5(a)(2) of the Uniform Fraudulent Transfer Act. Constructive fraud occurs when (1) a voluntary gift is made, (2) there is an existing or contemplated indebtedness against the debtor, and (3) the debtor has failed to retain sufficient property to pay the indebtedness. *In re Martin,* 145 B.R. 933, 946 (Bankr.N.D.Ill.1992), citing *In re Aluminum Mills Corp.,* 132 B.R. 869, 888 (Bankr.N.D.Ill.1991), and *Gendron v. Chicago & North Western Transportation Co.,* 139 Ill.2d 422, 437, 151 Ill.Dec. 545, 564 N.E.2d 1207, 1214 (1990). "Establishing fraud in law does not require proof of actual intent to defraud." *Stone,* 365 B.R. at 874, citing *General Electric Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1079 (7th Cir. 1997); *Scholes v. Lehmann,* 56 F.3d 750, 757 (7th Cir.1995).

> *Apollo Real Estate Investment Fund, IV, LP v. Gelber*, 403 Ill.App.3d 179, 935 N.E.2d 963, 976 (1st Dist. 2010), *appeal denied*, 238 Ill.2d 647 ( 2010)

A IUFTA §5(a)(2) claim requires proof that a transfer was made [1] without receiving a reasonably equivalent value in exchange for the transfer, and [2] that the transferor [here Metropulos] *also* then:

(A) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

First: The Count II claim fails because FW cannot claim a failure of Metropulos to receive "reasonably equivalent value" for the transfer of his Membership Interests. FW has taken and still takes the position in this litigation (and has pleaded that position to this Court) that Metropulos' membership interests were then worthless – *i.e.*, had zero value. FW is estopped from claiming that the transfer was made without receiving equivalent value of zero. A transfer of valueless property cannot possibly be a "fraudulent transfer" under UFTA §5(a)(2).

In this litigation, FW takes the position that the value of the transferred membership interest was zero or negative. *See*, dkt. no. 42-1, at 3-4, asserting the January 2, 2015, FW letter to Metropulos (by counsel) stating:

> … the fair market value of his interest is a negative number as of the date of his dissociation and/or is exceeded by his debt to the Companies.
>
> Dkt. no. 42-1, at 4
>
> The Companies' balance sheet and income statement establish that Metropulos' interest has a negative value as of the date of his dissociation [*i.e.*, Dec. 2, 2014, in FW's view].
>
> Dkt. no. 42-1, at 5
>
> As the balance sheets indicate, consideration of the patents still results in a negative number for Metropulos' distributional interest.
>
> Dkt. no. 42-1, at 5

In its discovery responses, FW produced a valuation report dated April 28, 2018 (by a valuation "expert" retained by Smart Bar USA) which stated that the fair market value of Smart Bar USA as of December 31, 2017, was zero. [FW_0110 – 0199.]

Second: If the transferred asset was worth zero, as FW claims, then the transfer of that worthless asset could not reduce the aggregate value of Mr. Metropulos' personal

7

assets – and therefore could not possibly have any "fraudulent" economic effect on any actual or forseeable or possible debts later incurred by Mr. Metropulos.

<u>Third</u>: At that time, Metropulos (and his wife) had $281,000 in cash or equivalent in the bank [Declaration of Wm. Metropulos, ¶17] and his debts (other than on his home mortgage and a small amount for current living expenses) consisted only of a $71,590 note to Smart Bar USA. [Declaration of Wm. Metropulos, ¶18.] Accordingly, his assets were more than sufficient to withstand any IUFTA §5(a)(2) fraudulent conveyance claim.

For all of these reasons, the elements of the Count II §5(a)(2) fraudulent conveyance claim fail as a matter of clear and convincing fact and as a matter of law.

### D. Count III: §6(a) Claim Claim Arising Before Transfer

Count III is an action under IUFTA §6(a) [740 ILCS 160/6(a)] which in relevant part provides (*emph*. added) (text as to transfers; "obligations" text omitted):

> 160/6 **Transfer or obligation fraudulent as to creditor – Claims arising before the transfer**
>
> §6. (a) A transfer made … by a *debtor* is fraudulent as to a creditor whose *claim arose before* the transfer was made … *if* the debtor made the transfer … without receiving a reasonably equivalent value in exchange for the transfer … *and* the debtor was *insolvent* at the time *or* the debtor *became insolvent* as a result of the transfer or obligation.

The elements of a §6(a) fraudulent transfer claim are clear:

> Under § 6(a) of the IUFTA, the [plaintiff] Trustee must show that: (1) his claim arose before the transfers; (2) the debtor made the transfers without receiving reasonably equivalent value in exchange …; and (3) the debtor

> was either insolvent at the time of the transfers or became insolvent as a result of the transfers. *In re Roti,* 271 B.R. 281, 304 (Bankr.N.D.Ill.2002). The question ... is if and when the Hospital became insolvent ....
>
> *In re Doctors Hospital of Hyde Park*, 507 B.R. 558, 631 (Bankr. N.D.Ill., 2013).

<u>First</u>:  IUFTA §6(a) does not apply to this transfer.  FW was not a creditor of Metropulos at the time of the transfer, *i.e.*, FW did not have a "claim [that] arose before the transfer."   The only monetary relief which FW ultimately requested against Mr. Metropulos was an award of attorney's fees for the costs of the arbitration proceeding itself (pursuant to the fee-shifting provision in the operating agreements).   [Declaration of Wm. Metropulos, ¶15(d); Exh. "E" ("Relief Requested by Claimants").]    And that was the only monetary relief awarded by the arbitrator in favor of FW and against Mr. Metropulos.  [Declaration of Wm. Metropulos, ¶15(e).]

 FW's claim against Metropulos did not arise until months *after* the transfer, when the arbitrator awarded prevailing party attorney's fees against Metropulos.  Accordingly, the "claim arose before the transfer" element of the Count III claim cannot be satisfied.

The contingent possibility that a party to a contract that contains a fee-shifting provision *might* possibly be held liable down the road for another party's legal fees in a *future* judicial or arbitral ruling is not a sufficient basis to support a current "fraudulent conveyance" action against a transfer.  The statute requires a claim for payment.  But a *possible* obligation to pay a *possible* future award does not become a claim for money and does not "arise" until fees are actually awarded and the obligation to pay is established.

9

If, *arguendo*, the *possibility* of a future doubly-contingent fee award were a sufficient predicate of a current fraudulent conveyance action, then every party to a business contract containing a fee-shifting provision would be immediately subject to fraudulent transfer claims against unrelated transactions that occurred after the contract – thus injecting uncertainty into later business transactions. That would be a novel expansion of the IUFTA, and would emasculate the statutory "claim arose before" language.

Second: Mr. Metropulos was not insolvent at the time of the transfer – with or without the Smart Bar LLC interests -- and did not become insolvent as a result of the transfer.

> According to the IUFTA and the Bankruptcy Code, "a debtor is insolvent if the sum of [its] debts is greater than all of [its] assets at a fair valuation." *In re CF Graphics, Inc.,* No. 06 B 00459, 2009 WL 2215089, at *10 (Bankr. N.D. Ill. July 21, 2009) (quoting 740 ILCS 160/3(a) and citing 11 U.S.C § 101(32)).
>
> *In re Chicago Management Consulting Group, Inc.*, 569 B.R. 722, 728 (N.D.Ill., 2017) (Alonso, J.)

At the time of the July 2014 transfer, Mr. Metropulos (and his wife) had over $300,000 in assets in the bank and a brokerage account. [Declaration of Wm. Metropulos, ¶17.] His only material debts at the time were his home mortgage (which was less than the value of his house) and a $71,590 note to Smart Bar USA. [Declaration of Wm. Metropulos, ¶18.] Element #3 of plaintiff FW's §6(a) claim cannot be met.

### D.
### Count IV:  The alter ego claim

Count IV is a freestanding common law action that apparently seeks to pierce the corporate veil of WM Associates, LLC (which now owns the transferred membership interests in the Smart Bar companies) in order to reach those interests (as actually being Metropulos' property) to satisfy its attorney's fee judgment(s) against Mr. Metropulos.

Count IV is *not* brought under the IUFTA, nor under any of the Illinois post-judgment statutory enforcement actions.  Count IV is ultimately based on an alleged fraud: its allegation that "… WM Associates LLC, is merely an *alter ego* of Metropulos set up to sanction and further a fraud on Plaintiff as a creditor of Metropulos" [Dkt. no. 45 (Amended Complt., Count IV, ¶48].

Aside from its factual failure for lack of the alleged fraudulent intent, Count IV fails as a matter of law for four reasons:

(1) If Count IV is considered to be a pure "*alter ego*" action, it does not lie at all, as Illinois no longer allows free-standing *alter ego* claims, which must be brought if at all as part of a claim to impose liability.   [*A.L. Dougherty Real Estate Mgmt. Co., LLC v. Tsai*, 2017 IL App (1st) 161949, ¶26, 98 N.E.2d 504, 515 (Ill.App., 2017) (In Illinois "there is no 'stand-alone' alter ego cause of action.").] (Dougherty supplants the prior opposite ruling in *Federal Ins. Co. v. Maritime Shipping Agencies, Inc.*, 64 Ill.App.3d 19, 380 N.E.2d 873 (1978). )

(2) In any event, this Count IV claim is not a genuine *alter ego* claim;  it is the inverse of such a claim.  An *alter ego* claim seeks to pierce a corporate veil (in an action

11

to impose liability on the corporate entity) in order to also impose that liability on a separate entity or individual (usually an owner) that is alleged to be the actual tortfeasor or contract-violator but acted through a corporate entity.

> Piercing the corporate veil is … a means for imposing liability in an underlying cause of action. *Id.*; *Buckley v. Abuzir*, 2014 IL App (1st) 130469, ¶ 9, 380 Ill.Dec. 624, 8 N.E.3d 1166.
>
> *A.L. Dougherty Real Estate Mgmt. Co., LLC v. Tsai*, 2017 IL App (1st) 161949, ¶24, ¶26, 98 N.E.2d 504, 515 (Ill.App., 2017)

This Count IV action is the *inverse* – in a *subsequent* action it seeks to transfer already-imposed liability *from* the "wrongdoer" *to a corporate entity*. There is no liability claim against WM Associates, LLC, now or previously. Nor is there any claim that Metropulos' litigation actions that gave rise to the attorney's fee judgment were done through or by WM Associates, LLC. Count IV is the opposite of a real alter ego claim: it seeks to hold the LLC liable for the debt of one of its owners. Accordingly, Count IV does not state an *alter ego* claim.

(3) In any event, FW has waived this asserted "alter ego" attempt to foist Mr. Metropulos' attorney's fee liability onto WM Associates, LLC. FW did not assert that theory in the post-judgment supplementary proceedings in the state court, even though it twice sought a charging order against Mr. Metropulos' interest in WM Associates, and ultimately obtained that relief. [*See*, Exhibit "F" (Case No. 15 CH 10108; Orders entered Sept. 11, 2017, and March 13, 2019).] Having failed (after more than 1-1/2 years of proceedings) to assert this theory in state court, it cannot now assert it in this diversity case in federal court.

(4) FW is also barred from asserting any "piercing the corporate veil" claim against WM Associates, LLC – because FW consented-in-advance to Metropulos' transfer of the Smartbar membership interests to a company or trust like WM Associates, LLC. FW knew or should have known that as to *ownership* of the Smart Bar companies, it could and likely would be dealing with a corporate or trust entity separate from Mr. Metropulos (although controlled by him).

Metropulos had the right to make such a transfer of his ownership interests at any time. The parties agreed that Metropulos could, as he did, separate ownership and control. FW cannot now complain of that which it agreed to, and cannot legally or equitably divest Metropulos' family of their property. This is especially so in light of the fact that Mr. Metropulos' underlying wrongful conduct was a breach of contract (*i.e.*, of the Smart Bar Operating Agreement), rather than tortious:

> "Where there is no evidence of any misrepresentation, no attempt to conceal any facts, and the parties possess a total understanding of all of the transactions involved, Illinois courts will not pierce the corporate veil in a breach of contract situation." *Tower,* 371 Ill.App.3d at 1034, 309 Ill.Dec. 686, 864 N.E.2d 927. Efforts to pierce the corporate veil will be unsuccessful when the evidence shows the complaining party entered into the situation with full knowledge of the relationships among the players and no injustice occurred. *Tower,* [citation omitted].
>
> *1515 N. Wells, L.P. v. 1513 North Wells, L.L.C.*, 392 Ill.App.3d 863, 913 N.E.2d 1, 10 (1st Dist. 2009)

> Consistent with its interest in facilitating the market for productive assets, Illinois common law states that a successor entity does not assume the liability of its predecessor. *Vernon v. Schuster*, 179 Ill.2d 338, … (Ill. 1997) (*son's inheritance of father's sole proprietorship cuts off liability*).
>
> *Moriarty v. Svec*, 164 F.3d 323, 327 (7th Cir. 1998) (*emph.* added)

13

For all of these reasons, and because there was no fraudulent intent by Metropulos (discussed in Point A, *supra*), summary judgment lies on Count IV.

## CONCLUSION

For all of the foregoing reasons, defendants, WM Associates, LLC, and William Metropulos, respectfully request the entry of summary judgment in their favor and against plaintiff, FW Associates, LLC, on and as to Counts I, II, III and IV of the Amended Complaint.

Respectfully submitted,

Defendants,

WM Associates, LLC, and
William Metropulos

By: _____/s/ David A. Epstein_____
          one of their attorneys

By: _____/s/ Gary A. Weintraub_____
          one of their attorneys

David A. Epstein
D.A.E. Law Office
111 W. Washington Street - #1110
Chicago, Illinois  60602
(312) 553-1479
law60600@aol.com

Gary A. Weintraub
Gary A. Weintraub, P.C.
465 Central Ave. - #100
Northfield, Illinois  60093
(847) 441-8535
gweintraub@bartonhealthcare.org

## CERTIFICATE OF SERVICE

  The undersigned, one of the attorneys for Defendants, WM Associates, LLC, and William Metropulos, hereby certifies that he properly provided through the Court's electronic filing system a copy of the "Defendants' Memorandum in Support of Their Motion for Summary Judgment" to the below named counsel of record on May 3, 2019:

    Mitchell B. Katten, Esq.
    Joshua R. Diller, Esq.
    Katten & Temple LLP
    209 S. LaSalle Street
    Suite 950
    Chicago, Illinois 60604
    mkatten@kattentemple.com
    jdiller@kattentemple.com

          /s/ Gary A. Weintraub
          Gary A. Weintraub,
          one of the attorneys for Defendants


David A. Epstein
D.A.E. Law Office
111 W. Washington Street - #1110
Chicago, Illinois 60602
(312) 553-1479
Law60600@aol.com

Gary A. Weintraub
Gary A. Weintraub, P.C.
465 Central Ave. - #100
Northfield, Illinois 60093
(847) 441-8535
gweintraub@bartonhealthcare.org

*Attorneys for Defendants,*
*WM Associates, LLC, and William Metropulos*