**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FW ASSOCIATES, LLC, a Nevada<br>limited liability company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2018-CV-5081 |
| | ) | |
| WM ASSOCIATES, LLC, an Illinois limited<br>liability company, and WILLIAM METROPULOS, | ) | Hon. Judge Kennelly |
| | ) | |
| | ) | |
| Defendants. | ) | |

**FW ASSOCIATES LLC'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SUMMARY**
**JUDGMENT ON COUNTS I AND IV OF ITS AMENDED COMPLAINT**

Plaintiff, FW Associates, LLC ("**FW**" or "**Plaintiff**"), files the following Memorandum in Support of its Motion for Summary Judgment on Counts I and IV of its Amended Complaint.

## I.  INTRODUCTION

FW and defendant William Metropulos ("**Metropulos**") were previously members in two limited liability companies, Smart Bar USA, LLC ("**SB-USA**") and Smart Bar International, LLC ("**SB-International**") (collectively, the "**Smart Bar Entities**"). In 2014 the parties submitted a dispute to arbitration that resulted in an award that, *inter alia*, dissociated Metropulos from both Smart Bar Entities and ordered him to pay FW more than $250,000 in damages. An Illinois state court confirmed the award and issued a judgment in favor of FW and against Metropulos in the principal sum of $455,908.67 plus post-judgment interest. Nearly all of this judgment remains unsatisfied – Metropulos has paid less than $2,000 to date.

After the arbitration concluded, FW learned for the first time that in July 2014 Metropulos had purported to transfer his interests in the Smart Bar Entities to defendant WM

Associates, LLC ("**WM LLC**"), an entity comprised of Metropulos, his wife Suzanne and their two children. Metropulos made this transfer for no consideration while the arbitration was pending. Moreover, he concealed the transfer from FW while simultaneously continually asserting ***his personal*** ownership rights in the arbitration and two related state court proceedings. Now that FW seeks to collect against Metropulos's interests in the Smart Bar Entities, he claims the transfers to WM LLC should be given effect and bar FW from collecting.

FW is entitled to judgment as a matter of law on Counts I and IV of its Amended Complaint. With respect to Count I, FW seeks a finding that the transfers constitute a fraudulent conveyance under 740 ILCS 160/5(a)(1), because they were made "with actual intent to hinder, delay, or defraud" FW as Metropulos's creditor. The undisputed facts establish that no less than seven "badges of fraud" are present and create a presumption of fraudulent intent that Metropulos cannot rebut. With respect to Count IV, FW seeks a finding that WM LLC is simply Metropulos's alter ego that exists solely to delay and hinder FW's creditor claims. Metropulos admits that he and WM LLC are "one and the same." The veil of WM LLC's corporate existence is a sham and should be disregarded by this Court in finding that whatever rights Metropulos may have in the Smart Bar Entities, they are subject to FW's judgment.

## II.  UNDISPUTED MATERIAL FACTS[1]

### A.    In 2013-14, FW and Metropulos were involved in disputes related to the Smart Bar Entities in arbitration and federal court.

In December 2013, Metropulos caused two lawsuits to be filed in the Circuit Court of McHenry County against FW and its managers Barry Fieldman ("**Fieldman**") and Juanita Wasserman ("**Wasserman**") (collectively, FW, Fieldman and Wasserman are the "**FW Parties**"). *See* FW Associates, LLC's Local Rule 56.1 Statement of Undisputed Facts Supporting

---

[1] This Court has personal and subject matter jurisdiction and venue is proper. *See* SOF at ¶¶ 1-6.

its Motion for Summary Judgment (the "**SOF**"), at ¶ 7. The FW Parties removed one of the lawsuits, captioned *Metropulos v. FW Associates, LLC, et al.,* to the U.S. District Court for the Northern District of Illinois, case no. 14-cv-50025 (the "**Federal Action**"). *Id*. at ¶ 8. The FW Parties then filed a motion to dismiss the claims and sought an award of their attorneys' fees from Metropulos pursuant to the fee-shifting provision in the SB-USA Operating Agreement. *Id*. at ¶ 9. The motion to dismiss was granted, and on March 11, 2015, the Court in the Federal Action entered a judgment against Metropulos for $46,290. *Id*. at ¶¶ 10-11.

On March 11, 2014 (more than four months prior to the Transfer, as defined below), FW filed an arbitration with the American Arbitration Association against Metropulos and others (the "**Arbitration**"). SOF at ¶ 12. FW sought monetary and nonmonetary relief against Metropulos for breaches of his fiduciary duties and the Smart Bar Entities' Operating Agreements. *Id*. On December 2, 2014, the Arbitrator issued an Interim Award that awarded FW $250,000 from Metropulos and dissociated him as a member of the Smart Bar Entities. *Id*. at ¶ 13. On April 6, 2015, the Arbitrator issued a final award that, *inter alia*, restated the $250,000 monetary award in favor of FW and Metropulos's dissociation (the "**Final Award**"). *Id*. at ¶ 14.

**B.      Metropulos transferred his membership interests in the Smart Bar Entities for no consideration while the Arbitration and Federal Action were pending.**

On July 25, 2014, Metropulos executed two documents titled "Assignment of LLC Interests" (the "**Assignments**") under which he purported to transfer his membership interests in the Smart Bar Entities to WM LLC for no consideration (the "**Transfer**"). SOF at ¶ 15. WM LLC is an Illinois limited liability company with four members: Metropulos, his wife Suzanne ("**Suzanne**") and his children Dimitri and Ashley Metropulos ("**Ashley**"). *Id*. at ¶ 4. The membership interests in WM LLC are allocated as follows: Metropulos 10%, Suzanne 70%, Dimitri 10% and Ashley 10%. *Id*. at ¶ 17. None of WM LLC's members paid for their respective

membership interests in WM LLC. *Id*. at ¶ 21. Metropulos made the decision to form WM LLC and he alone determined the percentage of each member's ownership interest in the entity. *Id*. at ¶¶ 16, 18. WM LLC did not provide consideration to Metropulos for the Transfer. SOF at ¶ 22. Metropulos did not conduct a valuation in conjunction with the Transfer because he viewed ownership as being unchanged. *Id*. at 23.

At the time of the Transfer, the FW Parties' claims against Metropulos were pending in the Arbitration, as was their request to be awarded their attorneys' fees incurred in the Federal Action. SOF at ¶¶ 9, 12, 25.

**C.**     **Metropulos continued to exercise the same degree of control over the membership interests after the Transfer as he did before the Transfer.**

Metropulos exercised the same degree of control over the membership interest after the Transfer as he had prior thereto. SOF at ¶¶ 26, 28. Metropulos considered himself and WM LLC as "one and the same." *Id*. at ¶¶ 23, 29. Although the WM LLC Operating Agreement required the signature of two members to bind it to an agreement, Metropulos alone executed the Assignments on behalf of himself (as transferor) and WM LLC (as transferee). *Id*. at ¶¶ 19, 27. WM LLC never passed a resolution authorizing Metropulos to act individually on its behalf with respect to the Transfer or any other matter, and did not authorize Metropulos to accept the Assignment on WM LLC's behalf. *Id*. at ¶ 20.

As discussed more fully below, despite the Transfer, Metropulos averred in the Arbitration and related state court proceedings that he, personally, held the membership interests in the Smart Bar Entities, and he never sought to name WM LLC as a party to these proceedings. SOF at ¶¶ 28-30.

4

**D.**     **Metropulos did not disclose the Transfer to FW and never sought to add WM LLC as a party in the Arbitration related state court proceedings.**

Defendants did not disclose the Transfer to FW at the time it occurred, and FW learned of the Transfer only after the Arbitration had concluded. SOF at ¶¶ 28. Throughout the Arbitration, Metropulos represented that he owned the subject membership interest individually, asserted claims based on that representation and never sought to add WM LLC as a party. SOF at ¶¶ 29-32. For example, on or about October 28, 2014 (three months *after* the Transfer), Metropulos filed an Amended Statement of Claim in the Arbitration in which he continued to personally assert various claims as a member of the Smart Bar Entities and failed to disclose the Transfer or identify WM LLC as a party. *Id*. at ¶ 32.

The parties also litigated two separate actions in state court that related to the Arbitration. SOF at ¶ 33. Following entry of the Interim Award, and later the Final Award, Metropulos sought to vacate the awards in two separate matters filed in the Circuit Court of Cook County (the "**2014 Chancery Matter**" and "**2015 Chancery Matter**"). *Id*. In various pleadings and motions in these actions, Metropulos asserted that he was the owner of the membership interests in the Smart Bar Entities, notwithstanding the fact that both actions were filed well after the Transfer. *Id*.

Throughout the 2014 Chancery Matter, including on appeal, Metropulos alleged that he held the membership interests in the Smart Bar Entities individually, and did not name WM LLC as party or identify it as the owner of the membership interest. SOF at ¶ 34-44. The 2014 Chancery Matter was dismissed by the court, which dismissal was affirmed on appeal. *Id*. at 43. The Appellate Court further found that Metropulos was responsible for FW's attorneys' fees incurred in litigating the appeal, pursuant to the fee shifting provision in the Smart Bar Entities' Operating Agreements. *Id*. at ¶ 44.

The 2015 Chancery Matter resulted in confirmation of the Arbitration award and entry of a judgment against Metropulos in the sum of $420,225.25 (the "**Judgment**"). *Id*. at ¶ 47. In that action (filed almost a year after the Transfer), Metropulos *verified under oath* that he held the membership interests in the Smart Bar Entities individually, and he again failed to disclose the Transfer or add WM LLC as a party. SOF at ¶¶ 45-47. The same was true on appeal, where Metropulos claimed personal ownership of the membership interests, did not add WM LLC as a party and did not identify the Transfer. *Id*. at ¶¶ 48-49. *Id*. The Judgment was affirmed on appeal and the Appellate Court awarded FW its appellate attorneys' fees and costs against Metropulos in the sum of $35,683.33. *Id*. at 50-51.

Metropulos testified as WM LLC's corporate representative regarding its role in the Arbitration, the 2014 Chancery Matter and 2015 Chancery Matter. SOF at ¶ 29. Metropulos testified he did not disclose the Transfer or add WM LLC as a party in these proceedings because he considered WM LLC and himself as one and the same, and he believed he was representing his and WM LLC's respective interests. *Id*. at 52.

**E.** **Metropulos testified his membership interests had value at the time of the Transfer.**

On or about August 19, 2013 (less than 12 months prior to the Transfer), Metropulos rejected a seven figure offer for his membership interest in the Smart Bar Entities. SOF at ¶ 57. Metropulos believed that his membership interest was more valuable at the time of the Transfer than in August 2013. *Id*. at ¶¶ 58-59. The membership interest was Metropulos most valuable asset at the time of the Transfer. *Id*. at ¶ 60. Metropulos testified that the membership interest has sufficient value to pay off the Judgment. *Id*. at ¶ 61. In January 2015, Metropulos was offered a credit of $250,000 off the Judgment for the value of his distributional interests in the Smart Bar Entities, but he never responded to this offer. *Id*. at ¶ 62.

**F.     Metropulos has failed to satisfy the judgment or make any meaningful payments towards the balance.**

Metropulos has failed to satisfy the Judgment. SOF at ¶ 53. Metropulos did not make any payments toward the Judgment prior to 2019. *Id*. at ¶ 54. In 2019, FW initiated garnishment proceedings against Metropulos's employer, Emerald Wine Systems, and pursuant to this garnishment action has been receiving 15% of Metropulos's wages, or approximately $360.15 a pay period. *Id*. at ¶ 55. FW has received a total of five checks ($1,800.75) to date. These are the only monies that FW has received for the Judgment. *Id*. at ¶ 56. At that rate, the sum garnished is insufficient to cover the accruing interest on the Judgment.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. *See Carter v. City of Milwaukee*, 743 F. 3d 540, 543 (7th Cir. 2014). To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). Summary judgment is the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *See Koszola v. Bd. of Educ. of City of Chi.*, 385 F. 3d 1104, 1111 (7th Cir. 2004). The "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

# IV. ARGUMENT

**A.** **METROPULOS'S TRANSFER OF HIS MEMBERSHIP INTERESTS TO IMMEDIATE FAMILY MEMBERS FOR NO CONSIDERATION WHILE CLAIMS WERE PENDING AGAINST HIM CONSTITUTES A FRAUDULENT CONVEYANCE.**

FW moves for summary judgment on Count I of its claim under § 5(a)(1) of the Uniform Fraudulent Transfer Act (the "**Act**"), 740 ILCS 160/1 *et seq*. The undisputed facts establish that at least six (6) of the "badges of fraud" exist and lead to a presumption the Transfer was fraudulent. Because there is no record evidence to overcome this presumption of fraud, FW is entitled to summary judgment on Count I.

Under § 5(a)(1) of the Act, a transfer is fraudulent as to a creditor if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor…" 740 ILCS 160/5(a). "Actual intent" for purposes of § 5(a)(1) does not require a showing that the debtor acted with fraudulent intent. *Baldi v. Discepolo* (*In re: A1 Millennium Marina, Inc.*), 13-C-8676, 2016 WL 1161278, *6 (N.D. Ill. March 23, 2016) (citation omitted). Rather, "a transfer is made with 'actual intent' under § 5(a)(1) if the transfer 'directly tended to or did impair the rights of creditors.' *Id*. (citation omitted). Recognizing that a debtor will rarely admit fraudulent intent, the Act identifies eleven "badges of fraud" that a court may consider to determine the existence of such intent:

(1)     the transfer or obligation was to an insider;

(2)     debtor retained possession or control of the property transferred after the transfer;

(3)     transfer or obligation was disclosed or was concealed;

(4)     before transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5)     the transfer was of substantially all of debtor's assets;

(6)     the debtor absconded;

     (7)     the debtor removed or concealed assets;

     (8)     the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

     (9)     the debtor became insolvent shortly after the transfer was made or the obligation was incurred;

     (10)     the transfer occurred shortly before a substantial debt was incurred; and

     (11)     the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5; *Northwestern Memorial Hospital v. Sharif*, 22 N.E.3d 1217, 1225 (Ill. App. Ct. 1st Dist. 2014). Illinois courts "routinely hold that the presence of a sufficient number of these 'badges' gives rise to a presumption of fraud." *Frank Ix & Sons, Inc. v. Phillip Textiles, Inc.*, 165 F.3d 32 (7th Cir. 1998) (*citing Steel Co. v. Morgan Marshall Industries, Inc*., 662 N.E.2d 595, 602 (Ill. App. Ct. 1st Dist. 1996)). If these badges of fraud exist in sufficient numbers, then the movant establishes a presumption of fraud and the burden then shifts to the non-movant to rebut that presumption. *Kunz v. City of Chicago*, 01-C-1753, 2007 WL 404022, *4 (N.D. Ill. January 31, 2007) (citations omitted).

     With respect to claims under § 5(a)(1), summary judgment in favor of a moving creditor is warranted where the undisputed evidence establishes a presumption of fraud, and the debtor fails to rebut the presumption with competent evidence. *See*, *e.g.*, *Olsen v. Ruvalcaba* (*In re: Ruvalcaba*), No. 18-96071, 2018 WL 2317682, * 17 (N.D. Ill. May 18, 2018) (entering summary judgment where evidence established six badges of fraud); *see also Kunz*, 2007 WL 404022 at *4 (entering summary judgment where evidence established seven badges of fraud); *DeMars v. Danciu* (*In re: Adrian POP*), 06-A-1693, 2007 WL 1592957, *4 (N.D. Ill. May 24, 2007)

(entering summary judgment where evidence established three badges of fraud); *Baldi*, 2016 WL 1161278, \*9 (entering summary judgment where evidence established four badges of fraud).

In this case, the undisputed evidence establishes at least six (6) of the badges and leads to a presumption of fraudulent intent.

### 1. The transfer was to an insider [§ 5(b)(1)].

There is no dispute that the transferee, WM LLC, is an "insider" – it is comprised of Metropulos, his wife and two children. SOF at ¶¶ 4, 15, 17, 19. *See In re Roti*, 271 B.R. 281, 301 (Bankr.N.D.Ill. 2002) ("While a transfer between family members is not proof *per se* of fraudulent intent, a familial relationship is weighty proof of such intent"); *see also DeMars*, 2007 WL 1592957 at \*4 ("The most obvious badge of fraud is that the transferees are the in-laws of Debtor, a 'familial relationship.'").

### 2. Debtor retained control of the property transferred after the transfer [§ 5(b)(2)].

Metropulos admits that he maintained control over his membership interests after the Transfer, testifying that he considered himself and WM LLC "one and the same." SOF at ¶¶ 23, 26, 28, 29, 52. Moreover, as set forth *supra*, notwithstanding the Transfer Metropulos continued to assert personal ownership claims in the Arbitration, the 2014 Chancery Matter and the 2015 Chancery Matter, as though the Transfer had never occurred, for years after the Transfer. *See supra* at §II(D). Metropulos signed the Transfer document for both himself and WM LLC, even though the WM LLC Operating Agreement required that two members execute any agreement, and WM LLC never authorized Metropulos to act unilaterally on its behalf. SOF at ¶¶ 20, 27.

### 3. The Transfer was concealed [§ 5(b)(3)].

Metropulos concealed the Transfer. He did not give notice to FW at the time he made the Transfer, even though the Arbitration was pending. *See supra* at §II(D)FW learned of the

Transfer only after the Arbitration had ended. *Id.* Again, Metropulos did not add WM LLC as a party to the Arbitration or the later proceedings, and instead outwardly acted as though no Transfer had ever occurred.

### 4. Before the Transfer was made, Metropulos had been sued in the Arbitration [§ 5(b)(4)].

FW had claims pending against Metropulos at the time of the Transfer – it had filed the Arbitration and requested its attorneys' fees in the Federal Action. *See* SOF at ¶ 25. These very actions resulted in judgments being entered against Metropulos that totaled more than $500,000. *See* SOF at ¶¶ 9-11, 14, 47, 51.

### 5. No consideration was paid for the Transfer [§ 5(b)(8)].

WM LLC provided no consideration for the Transfer. SOF at ¶¶ 21-23. This is despite the fact that Metropulos turned down a seven figure offer less than a year earlier, and Metropulos contends that the value of the membership interest had increased at the time of the Transfer. SOF at ¶¶ 57-59. Given that no consideration was paid, the precise value of Metropulos's membership interests is immaterial.

For example, in *Ruvalcaba*, the court considered whether the debtor's transfer of a parcel of real estate was for reasonably equivalent consideration. 2018 WL 2317682 at *10. In finding reasonably equivalent value had not been paid, the court found: "while there may be a dispute as to the precise value of [the property], there is no genuine dispute that the Debtor did not receive reasonably equivalent value when he transferred the property…[i]ndeed, no admissible proof has been presented to show that the Debtor received any value. The Defendant apparently concedes that she did not pay any cash or transfer other assets to the Debtor in return for the property." *Id*. Here, whatever the value of Metropulos's membership interests, the fact that no consideration was paid for the Transfer means FW has established the § 5(b)(8) badge of fraud.

**6.    The Transfer occurred shortly before a substantial debt was incurred [§ 5(b)(10)].**

Metropulos made the Transfer at the end of July 2014. Approximately four months later, on December 2, 2014, the Arbitrator entered the Interim Award against Metropulos in excess of $250,000. SOF at ¶ 15. In addition, on March 11, 2015, the court in the Federal Action entered a separate judgment against Metropulos in the sum of $46,290. *Id.* at ¶ 11. These judgments were for attorneys' fees that were incurred primarily at and immediately after the time of the Transfer.

In sum, because the undisputed facts establish the existence of numerous badges of fraud, the burden shifts to Metropulos to show the propriety of the transfer. *Sharif*, 22 N.E.3d 1227-28. Metropulos cannot carry this burden where he transferred his membership interest to family members for no consideration at a time when claims were pending against him. Despite assigning himself only 10% of WM LLC, Metropulos represented in the Arbitration and numerous court proceedings (including under oath) that he personally owned the membership interest. As such, the undisputed facts establish Metropulos' intent to hinder FW's collection efforts. *See A.G. Cullen Construction Inc.*, 29 N.E.3d 579, 588 (Ill. App. Ct. 1st Dist. 2015) (holding that a transfer of assets by defendant after plaintiff filed a demand of arbitration put defendant "on notice of a threatened lawsuit and the real possibility of judgment against [the defendant]"); *Kennedy v. Four Boys Labor Services, Inc.*, 664 N.E.2d 1088, 1092-93 (Ill. App. Ct. 2nd Dist. 1996) (holding transfer of assets during the pendency of a lawsuit against corporation supported the finding that the transfer of assets constituted a fraudulent conveyance).

Finally, it is worth noting that Metropulos prejudiced FW by failing to disclose the Transfer or name WM LLC as a party in the Arbitration and various litigation matters. Had Metropulos disclosed the Transfer and properly added WM LLC as a party to the Arbitration and litigation, then FW would have been able to obtain its Judgment against WM LLC, *i.e.* the

12

member asserting the ownership rights. This would have allowed FW to obtain its prevailing party fee shifting award against WM LLC, and then used that judgment to collect against the membership interests in the Smart Bar Entities. Having continually asserted his ownership of the membership interest in litigation matters, including in verified pleadings, Defendants should be estopped from now contending that the assets are not subject to FW's Judgment. For these and all of the reasons set forth above, FW respectfully requests that this court enter summary judgment in FW's favor on Count I.

**B.     WM LLC IS THE ALTER EGO OF METROPULOS.**

In Count IV, FW seeks a finding that WM LLC is the alter ego of Metropulos. It is well-established that "[a] court may disregard a corporate entity and pierce the veil of limited liability where the corporation is merely the alter ego or business conduit of another person or entity." *A.L. Dougherty Real Estate Mgmt. Co., LLC v. Su Chin Tsai*, 98 N.E.3d 504, 515 (Ill. App. Ct. 1st Dist. 2017) (*quoting Peetoom v. Swanson*, 778 N.E.2d 291 (2002)). Piercing the corporate veil is "a means for imposing liability in an underlying cause of action." *A.L. Dougherty Real Estate Mgmt. Co., LLC*, 98 N.E.3d at 515. To pierce a corporate veil, a movant must demonstrate: "(1) there is such a unity of interest and ownership that this separate personality of the corporation and the parties who compose it no longer exist, and (2) circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances." *Id.* (quotation and citation omitted).

The undisputed evidence establishes both prongs of the test. There is a unity of interest between Metropulos and WM LLC. Metropulos testified that he and WM LLC are "one and the same." SOF at ¶¶ 23, 26, 28, 29, 52. On this purported basis, Metropulos did not add WM LLC as a party in the Arbitration, 2014 Chancery Matter or the 2015 Chancery Matter. *Id.* WM LLC

did not obtain counsel and appear in these matters because Metropulos was acting for both himself and WM LLC. *Id.*

Moreover, Metropulos did not determine the value of his membership interest in conjunction with the Transfer because of his belief that there was "no change in ownership." SOF at ¶¶ 22-23. For this same reason, Metropulos did not receive consideration in conjunction with the Transfer. *Id.* at ¶¶ 21-22. Additionally, Metropulos continued to exercise control over the membership interest as if the Transfer had not occurred. *Id.* at ¶¶ 26-30. Metropulos alone signed the Transfer Document for himself and WM LLC, despite the fact that the WM LLC's Operating Agreement required the signature of two managers for any agreement. *Id.* at ¶¶ 19, 27-28. Metropulos represented his interests and WM LLC's interests in the Arbitration and the litigation without obtaining counsel to protect WM LLC's interests, because there is complete unity of interest and no distinction between the two. *Id.* at ¶ 52. The members of WM LLC did not provide any consideration for their respective membership interests. *Id.* at ¶ 21. In short, WM LLC is a merely a facade for Metropulos.

Adherence to the fiction of WM LLC as a separate corporation would promote injustice and inequitable circumstances. Metropulos transferred his most valuable asset to hinder creditors without receiving any consideration in return. He has ignored corporate formalities and at all times acted as if there was no distinction between himself and WM LLC. Allowing WM LLC to maintain the membership interests, and yet avoid the Judgment and allow it to remain completely outstanding, would promote injustice and be inequitable. As stated above, had Metropulos disclosed the Transfer and/or made WM LLC a party in the Arbitration or litigation proceedings, FW's judgment would also be against WM LLC.

## V. CONCLUSION

For all these reasons, FW Associates, LLC respectfully requests that this Court grant summary judgment on its behalf on Counts I and IV of its Amended Complaint, and award it such additional relief as appropriate in the premises.

Respectfully Submitted,

FW Associates, LLC

By: /s/ Mitchell B. Katten

Mitchell B. Katten
Joshua R. Diller
Katten & Temple LLP
209 S. LaSalle St., Suite 950
Chicago, IL 60604
(312) 663-0800
mkatten@kattentemple.com
jdiller@kattentemple.com